FILED
2017 Nov-09 AM 10:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **KINGY OSSARIUS HOLDEN,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | Case Nos.   5:16-CV-8010-KOB |
| **v.** ) | 5:11-cr-399-KOB-JHE |
| ) | |
| ) | |
| **UNITED STATES OF AMERICA,** | |

**MEMORANDUM OPINION**

This case is before the court on Kingy Ossarius Holden's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.[1] (Civ. Doc. 1).[2] A jury found Mr. Holden guilty of conspiracy to possess with the intent to distribute 1000 kilograms or more of marijuana, four counts of distributing marijuana, and one count of being a felon in possession of a firearm. In his motion to vacate, he alleges three grounds: (1) his conviction was based on evidence obtained through an unconstitutional search and seizure; (2) his trial counsel was ineffective for failing to file a motion for a new trial based on newly discovered evidence; and (3) his appellate counsel was

---

[1] A prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court . . . to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

[2] The court will designate documents from Mr. Holden's civil and criminal cases as follows: "Civ. Doc. ___" for documents from 5:16-cv-8010-KOB and "Cr. Doc. ___" for documents in 5:11-cr-399-KOB-JHE.

ineffective for failing to present issues on appeal.

The court has interpreted Mr. Holden's claims liberally because he is not represented by counsel in this action. *See Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000) ("Pro se filings, including those submitted by [the petitioner] in the present case, are entitled to liberal construction."). After reviewing Mr. Holden's motion to vacate, the Government's response, Mr. Holden' replies, and the court record including the trial transcript, and for the following reasons, the court finds that his motion to vacate is due to be DENIED on all grounds.

## I. BACKGROUND

The Government filed a twenty-six count Superseding Indictment on December 29, 2011against Mr. Holden and fourteen other defendants, charging crimes related to a drug distribution ring, money laundering, and firearm offenses. Specifically, the Superseding Indictment charged Mr. Holden with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine hydrochloride and 280 grams or more of "crack" cocaine (Count One); conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana (Count Two); distribution of marijuana (Counts Three through Six); felon in possession of a firearm (Count Eleven); and money laundering (Counts Twenty-Three through Twenty-Six). (Crim. Doc. 53).

Prior to his trial, Mr. Holden's trial attorney, Bruce Harvey, along with several co-defendants, moved to suppress recordings of calls, and any evidence derived from those calls, that the Government intercepted via wiretaps on Mr. Holden's telephone. After a hearing on the

motions to suppress, the district court denied those motions on July 5, 2012. (Crim. Doc. 184).

The drug conspiracy trial began on July 23, 2012, and lasted more than one week. Prior to the Government resting its case, it orally moved to dismiss Count Twenty-Four against Mr. Holden, which the court granted. After the Government rested on August 1, 2012, Mr. Holden's counsel moved for judgment of acquittal under Fed. R. Civ. P. 29(a), which the district court denied. The jury found Mr. Holden not guilty on the conspiracy to possess with intent to distribute cocaine and three counts of money laundering, but guilty on the conspiracy to distribute marijuana count, four counts of distributing marijuana, and the felon in possession count. (Crim. Doc. 212).

The district court sentenced Mr. Holden on April 15, 2013 to 365 months' imprisonment on the marijuana conspiracy count, and to 120 months' imprisonment on the marijuana distribution counts and felon-in-possession count, separately, with each count to be served concurrently with each other. (Crim. Doc. 342).

**Appeal**

Bruce Harvey filed a notice of appeal on Mr. Holden's behalf, but indicated in that notice that the court appointed Charles S. Linton to represent Mr. Holden on appeal to the Eleventh Circuit. (Crim. Doc. 337). The Eleventh Circuit affirmed the district court's judgment on February 11, 2015 in an unpublished opinion. *United States v. Holden, et al.*, 603 F. App'x 744 (11th Cir. 2015); *see also* (Crim. Doc. 412). The Supreme Court denied certiorari on January 14, 2016. (Crim. Doc. 424).

**Habeas Case**

Mr. Holden filed the current habeas motion asking this court to vacate, set aside, or correct his sentence on March 7, 2016. (Civ. Doc. 1). The court ordered the Government to show cause in writing why it should not grant the motion (civ. doc. 3), and the Government filed its response on June 6, 2016 (civ. doc. 7). Mr. Holden filed his reply to the Government's response on June 15, 2016. After the court gave him additional time to file any additional evidentiary materials, he filed exhibits on November 28, 2016. (Civ. Docs. 8 & 14).

Mr. Holden is currently incarcerated at Atlanta USP.

## II. DISCUSSION

Mr. Holden's three grounds for his motion to vacate involve either a claim that is procedurally defaulted or an ineffective assistance counsel claim that has no merit. After a discussion of the applicable law regarding procedural default and ineffective assistance of counsel, the court will address each ground separately.

**Applicable Law:**

*Procedural Default*

The procedural default doctrine reflects the general rule that claims not raised on direct appeal may not be raised on collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Federal courts will not review a procedurally-defaulted claim unless the defendant can show either (1) cause for the default *and* actual prejudice from the error; *or* (2) that the court's failure to consider the claim will cause a miscarriage of justice because the defendant is actually

innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 167 (1982).

To establish cause excusing procedural default, the petitioner must put forward "some external cause" for his failure to comply with the procedural requirements. *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997). A petitioner can also establish cause if he shows that his counsel was ineffective. *Id.* However, merely claiming ineffective assistance of counsel as cause for the procedural default is not enough—that ineffective assistance of counsel claim must have merit. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).

***Ineffective Assistance of Counsel***

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail on a claim of ineffective assistance of counsel, Mr. Holden must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness; *and* (2) he suffered prejudice because of that deficient performance. *See id.* at 684–91. Deficient performance exists when counsel acts "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The test is not what the best—*or even a good*—lawyer would have done, but "whether *some reasonable lawyer* at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (emphasis added).

A petitioner's counsel generally—not always—is presumed to have acted reasonably. *Strickland*, 466 U.S. at 690; *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999) ("[W]here the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."). To overcome that presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Conclusory or unsupported allegations cannot support an ineffective assistance of counsel claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (finding "unsupported allegations, conclusory in nature and lacking factual substantiation" to be an insufficient basis for relief); *see also Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing [*Strickland*] presumption.").

Moreover, if a petitioner can show his counsel's performance was deficient, he must also show that deficient performance prejudiced his case. *Eagle v. Linahan*, 279 F.3d 926, 943 (11th Cir. 2001); *see also Strickland*, 466 U.S. at 697 (finding that the court is not obligated to "address both components of the inquiry if the defendant makes an insufficient showing on one"). Prejudice exists if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome" of the case.

*Id*. Merely showing that counsel's error had "some conceivable effect on the outcome of the proceeding" cannot establish prejudice. *Id.* at 693.

***Ground 1: Evidence for Probable Cause for the Search Warrant Obtained by Unconstitutional Search and Seizure***

Mr. Holden argues that the evidence used to obtain the search warrant for the wiretaps was obtained by an unconstitutional search and seizure. He claims that the "Government's factual basis for probable cause for the wiretaps was relied upon by (CI) Ivan Fletcher whom at trial admitted to being a liar and double dealer"; that Agent Boyd testified during cross examination that he "never used normal investigative techniques before, during or even after the wiretaps"; and that Agent Boyd admitted that he did not determine "pertinent and non pertinent calls until a week before trail." In his reply to the Government's response, Mr. Holden further explains his reasons behind Ground 1, and specifically asserts that the wiretap applications lack the "necessity" and "minimization" requirements. However, Mr. Holden is procedurally barred from raising this issue regarding the wiretaps and has failed to show cause and actual prejudice to overcome this bar.[3]

Based on the language of this ground in his habeas motion, Mr. Holden is procedurally barred from raising this ground because he did not raise it in his direct appeal. Mr. Holden does not mention ineffective assistance of counsel or any other purported "cause" for his procedural

---

[3] Because Mr. Holden has not raised actual innocence, the court will not address whether the alleged error in Ground 1 constitutes a miscarriage of justice to overcome procedural default.

default for this ground in his habeas motion; but in his reply to the Government's response, he asserts that the facts he alleges in "Ground 3 will support Ground One." The court is unsure of the exact meaning of this statement, but Ground 3 alleges ineffective assistance of appellate counsel for failing to raise issues on appeal. The court surmises that Mr. Holden may be asserting ineffective assistance of appellate counsel as cause for his default in failing to raise this issue on direct appeal. As the court will discuss in more detail below under Ground 3, Mr. Holden's conclusory statements in Ground 3 are insufficient to show ineffective assistance of counsel as cause for his procedural default.

Moreover, assuming arguendo that somehow Mr. Holden could show that his appellate counsel's performance was deficient on this ground, he fails to show how an appeal on this issue would have changed the results of his case. To determine whether the failure of appellate counsel to raise a claim resulted in prejudice, the court must look to the merits of that claim on appeal. *See Eagle*, 279 F.3d at 943.

On direct appeal, Mr. Holden's counsel challenged this court's ruling regarding the validity of the wiretap applications; specifically, he argued that this court should have suppressed the evidence from the wiretaps because the applications did not include DOJ authorization memos and because one of the applications misidentified the authorizing official. *Holden*, 603 F. App'x at 748-50. The Eleventh Circuit discussed the validity of the wiretap applications at length, including co-defendant Myron Tibbs' argument that the applications failed to show necessity, and affirmed this court's denial of the motions to suppress evidence

derived from those wiretaps. Mr. Holden makes another attempt in this habeas action to defeat the evidence from those wiretaps, yet he fails to explain how or why the result of his appeal would have been different had his appellate counsel raised this precise issue in the posture in which Mr. Holden now presents it.

Mr. Holden's claims regarding Ivan Fletcher and Agent Boyd do nothing to show that the appeals court would have ruled differently regarding the evidence obtained from the wiretaps. The fact that Mr. Fletcher admitted during cross-examination that he was a liar and a double dealer does not negate that probable cause existed at the time of the wiretap applications and does not show how or why the Eleventh Circuit would have ruled differently regarding the admissibility of the evidence from the wiretaps. Mr. Holden's allegations regarding Agent Boyd also fail to show prejudice. The Eleventh Circuit addressed the issue of necessity on appeal and specifically found that the affidavit in support of the wiretap applications "sufficiently explained why 'investigative techniques that reasonably suggest themselves' were insufficient in this case" and "outlined in detail the traditional investigative techniques that either had been employed or had not been attempted based on dangerousness or a lack of probability of success." *Holden*, 603 F. App'x at 750. So Mr. Holden's claims regarding Ivan Fletcher and Agent Boyd fail to show that the Eleventh Circuit would have come to a different conclusion had his appellate counsel included these claims in the direct appeal.

Moreover, the fact that the jury acquitted Mr. Holden of the cocaine conspiracy charge does not mean that the initial wiretaps were invalid or that all of the evidence derived from

those wiretaps was obtained unconstitutionally; the jury simply found that the Government did not meet its high burden of proving that count beyond a reasonable doubt—a burden much higher than the probable cause necessary for the initial wiretap applications. Likewise, Mr. Holden's burden to show cause and actual prejudice to overcome procedural default on this ground is a high one, and Mr. Holden has failed to cross that hurdle..

***Ground 2: Ineffective Assistance of Trial Counsel for Failure to File a Motion for New Trial Based on New Evidence***

Mr. Holden claims that his trial counsel was ineffective because he failed to file a motion for a new trial based on the "newly discovered evidence" that Cedric Carroll, a co-defendant, lied under oath when Mr. Holden's "trial counsel asked [Mr. Carroll] had he cooperated before and he replied 'no.'" (Doc. 1 at 6). On cross examination at trial, Mr. Holden's trial counsel said to Mr. Carroll: "You have been a snitch before," and Mr. Carroll replied "No, sir, I haven't." "You haven't?" asked trial counsel, and Mr. Carroll responded: "This is my first case ever, sir." Mr. Holden's trial counsel then asked Mr. Carroll about incidents in 2008 and 2009 in which he acted as a confidential informant for a state agent, and Mr. Carroll admitted that he was a confidential informant in 2008 and 2009, but did not equate a "snitch" with a "confidential informant." (Crim. Doc. 371 at 106-09).

Mr. Holden alleges that the Government withheld *Brady* material because it did not disclose that Mr. Carroll had previously cooperated with the Government and that the Government knowingly used or failed to correct perjured testimony of Mr. Carroll. (Doc. 8 at 5,

7). Mr. Holden's trial counsel was not ineffective for failing to file a motion for a new trial that had no grounds for success. Even assuming arguendo that his trial counsel was ineffective for failing to file a motion for a new trial, Mr. Holden cannot show a reasonable probability that this court would have granted a motion for a new trial on this issue had his trial counsel filed one.

Mr. Holden claims that "[a]fter trial, but before sentencing, [he] discovered that the Government withheld *Brady* material on Cedric Carroll that proved he lied under oath." Mr. Holden asserts that the "Government knew this testimony was false, but failed to correct it as the document clearly proves." (Doc. 1 at 6). However, Mr. Holden failed to attach the referenced "document" to his habeas motion. And in his response to the Government's filing, Mr. Holden explained that he repeatedly asked "his attorney" for the document, but "counsel has not sent it." (Doc. 8 at 5). However, in his later evidentiary submission, Mr. Holden attaches a document entitled "Narrative" that sets out Mr. Carroll's involvement as a confidential information in 2008 and 2009 involving Tryrome Terrell Bynum as support for this ground in his habeas motion. (Doc. 14 at 14-16). Unfortunately for Mr. Holden, this document does not support that his trial counsel was ineffective for failing to file a motion for a new trial and does not show a reasonable probability that this court would have granted that motion.

To succeed on a motion for new trial alleging a *Brady* violation, Mr. Holden would have to show that

> (1) the government possessed favorable evidence to the defendant;
> (2) the defendant does not possess the evidence and could not

obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; *and* (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

*See United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002) (emphasis added); *see also United States v. Caro*, 589 F. App'x 449, 455 (11th Cir. 2014).[4]  Had Mr. Holden's trial counsel filed a motion for new trial based on this alleged *Brady* violation, that motion would have failed on several grounds.

    Mr. Holden's trial counsel obviously knew at trial about Mr. Carroll's past as a confidential information from December 2008 through June 2009 because counsel cross-examined Mr. Carroll extensively about it, including references to the specific months and dates contained in the "Narrative" document Mr. Holden claims the Government failed to disclose. (Crim. Doc. 371 at 106-115).  Therefore, this evidence could not be "newly discovered" after trial; Mr. Holden's counsel must have possessed such information *prior* to trial to cross examine Mr. Carroll about it *during* trial.  Moreover, because Mr. Holden's trial counsel cross-examined Mr. Carroll about his past as a confidential information, the jury was free to consider his past cooperation as impeachment of Mr. Carroll's testimony at trial.

---

[4] When a motion for a new trial alleges *Brady* violations, the district court does not use the standard for a motion for new trial under Fed. R. Crim. P. 33. *See United States v. Takhalov*, 2013 WL 2146996 (S.D. Fla. May 15, 2013).  This court finds that, even if the Rule 33 standard applied, Mr. Holden's claim on this ground still fails because the evidence was not discovered after trial; the evidence was merely cumulative or impeaching; and the evidence is not of "such a nature that a new trial would probably produce a new result." *See United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988).

So, Mr. Holden cannot show that his counsel was ineffective for failure to file a frivolous motion or a reasonable probability that the outcome of the case would have been different if counsel filed the motion.

Also, Mr. Holden has no basis for his *Giglio* claim that the Government knowingly used Mr. Carroll's false testimony and failed to correct his false statements. *See Giglio v. United States*, 405 U.S. 150 (1972). To succeed on a motion for a new trial alleging this ground, Mr. Holden would have to show that the Government "used or failed to correct" Mr. Carroll's false testimony; that the Government knew or should have know Mr. Carroll's testimony was false; and that a "reasonable likelihood" exists the "false testimony could have affected the judgment." *See Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1277, 1302 (11th Cir. 2014).

The fatal error in Mr. Holden's argument is that Mr. Carroll's testimony on this issue was not false. Mr. Carroll did not deny being a confidential information in 2008 and 2009; he just did not agree that being a confidential information meant he was a "snitch."

Mr. Carroll admitted that he started working as a confidential informant in December 2008 and continued to participate in controlled buys through June 2009, the exact dates and time line contained in the "Narrative." (Crim. Doc. 371 at 109). Mr. Holden's trial counsel asked Mr. Carroll during cross-examination: "You went in to talk to them and you started working with them in December 2008 as a confidential informant, didn't you?" Mr. Carroll responded "Yes, sir." *Id*. When asked "And you did that back in 2008 all the way through June of 2009,

didn't you?," Mr. Carroll responded "Yes, sir." (Crim. Doc. 371 at 111). Although Mr. Carroll initially denied being a "snitch," he ultimately admitted to being a confidential informant in the past.

Mr. Carroll did not give false testimony about being a confidential informant in 2008 and 2009, and Mr. Holden has produced nothing to show that the Government actually "used or failed to correct" any false testimony of Mr. Carroll. Therefore, Mr. Holden fails to show how his counsel could be ineffective for failing to raise this ground when Mr. Carroll did not give false testimony. He also fails to show a reasonable probability that this court would have granted a motion for a new trial on this ground had his trial counsel filed such a motion. Therefore, this ground fails to meet the *Strickland* standard.

***Ground 3: Ineffective Assistance of Appeal Counsel for Failure to Present Issues on Appeal***

For this ground, Mr. Holden admits that his appellate counsel filed an appeal challenging the denial of the motion to suppress, but he claims that "[t]here were numerous constitutional violations that [occurred] during trial and sentencing. Petitioner requests the right to be allowed to advance these issues on direct appeal." (Doc. 1 at 7). However, Mr. Holden gives the court absolutely no facts about these alleged constitutional violations, not even general statements about when or how these alleged violations occurred. Instead, Mr. Holden claims that he "cannot state the violations because, he [does] not have his trial transcript of [the] proceedings."

(Doc. 8 at 6). However, his conclusory statement that numerous constitutional violations occurred is insufficient to show ineffective assistance of appellate counsel or prejudice.

Mr. Holden's general, unsupported allegation that his appellate counsel was ineffective for failing to appeal "numerous constitutional violations" does not pass muster. *See Tejada*, 941 F.2d at 1559. The court understands that Mr. Holden may not remember each and every word from the trial; but, even without the trial transcript, he could give the court some indication about the factual support for the alleged constitutional violations to which he refers. However, he gives the court no facts at all to explain the alleged violations his appellate counsel failed to raise. The court cannot find his appellate counsel ineffective on grounds unrevealed by Mr. Holden and unknown to the court.

Moreover, Mr. Holden had access to his trial transcript because he attached several pages from it to his evidentiary submission filing. See (Doc. 14 at 4-20). If Mr. Holden could find these specific pages from the trial transcript to support his claims, he could have pointed the court to facts from the transcript to support his conclusion that alleged constitutional violations occurred. Even if Mr. Holden did not have all of the trial transcripts, he did not ask the court in this proceeding for access to those transcripts or for additional time to obtain them. In any event, he failed to give the court any facts to support his unsubstantiated conclusions. Such conclusions with no factual support cannot show ineffective assistance of appellate counsel.

Interestingly, Mr. Holden actually cites to pages from the transcript of the motion to suppress to support this ground even though he claims he had no transcripts. (Doc. 14 at 18-20). Mr. Holden claims that, because his trial counsel asked the court to certify the denial of the motion to suppress as an interlocutory appeal but the court denied that request, he "is entitled to a [belated] appeal, so that he may address trial and sentencing issues." (Doc. 8 at 6).

But, the court's denial of the interlocutory appeal on the motion to suppress issue has no bearing on this ineffective assistance of appellate counsel claim on this ground. His appellate counsel did file a direct appeal challenging the denial of the motion to suppress—the very issue for which he requested an interlocutory appeal. His counsel's request for an interlocutory appeal that the court denied does not subsequently give Mr. Holden the right to file more issues on direct appeal later.

His appellate counsel raised the strongest argument on direct appeal, and he is not ineffective for failing to raise frivolous issues on appeal. *See Deonarinesingh v. United States*, 542 F. App'x 857, 863 (citing *Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (per curiam)) ("Appellate counsel is not required to raise all nonfrivolous issues on appeal . . . especially where counsel raised other strong issues."). Mr. Holden has produced nothing for this ground other than unsubstantiated conclusory allegations, and this grounds fails to show that his appellate counsel was ineffective, much less that any prejudice occurred as required by *Strickland*.

III. CONCLUSION

For the reasons stated in this opinion, the court finds that Mr. Holden' motion to vacate is due to be DENIED on all grounds.

The court will enter a separate Order.

DONE and ORDERED this 9th day of November, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE